590 F.2d 161
 19 Empl. Prac. Dec. P 9023
 Richard BROWN et al., Plaintiffs,
v.
NEW ORLEANS CLERKS AND CHECKERS UNION LOCAL NO. 1497 I.L.A.
and New Orleans Steamship Association, Defendants-Appellants,
v.
Charles E. NEWMAN et al., Intervenors-Appellees.
Charles JETT et al., Plaintiffs,
v.
NEW ORLEANS STEAMSHIP ASSOCIATION, LOCAL NO. 1497, New
Orleans Clerks and Checkers, I.L.A., et al.,
Defendants-Appellants,
v.
Charles E. NEWMAN et al., Intervenors-Appellees.
 No. 76-3141.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 26, 1979.
 
 Andrew P. Carter, New Orleans, La., David E. Walker, for New Orleans Steamship Assoc.
 Victor H. Hess, Jr., New Orleans, La., for New Orleans Clerks & Checkers Union.
 Sidney M. Bach, George W. Reese, Charles E. Cotton, Valerie Fontaine, New Orleans, La., for P. A. Dawkins.
 George M. Strickler, Jr., R. James Kellogg, New Orleans, La., for Chas. E. Newman, et al.
 Louis A. Gerdes, New Orleans, La., for Richard Brown.
 Revius O. Ortique, Jr., New Orleans, La., for other interested parties.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 This is an employment discrimination case based on Title VII, 42 U.S.C. § 2000e-5 Et seq., and on 42 U.S.C. § 1981. The district court granted a motion to intervene and gave the intervenors partial relief. Defendants appeal from these orders. We find that the district court has entered no appealable order and therefore dismiss this appeal.
 
 
 2
 In 1971, the original plaintiffs, acting individually and on behalf of all blacks who had applied for employment with defendants, sued the New Orleans Clerks and Checkers Union, Local 1497 of International Longshoremen's Association, AFL-CIO, and the New Orleans Steamship Association, a group of employers. Plaintiffs alleged that these defendants control employment practices in the ports and other maritime facilities in and around New Orleans and that defendants impermissibly restricted the employment of blacks in the area. In May, 1975, the district judge ordered that notices be placed in various local newspapers explaining the class action, stating that the parties had reached a proposed consent decree and directing those who wished to be excluded from the class and the decree to notify the court clerk. The judge allowed one of the original plaintiffs, Brown, to opt out of the settlement and pursue the action individually. Other than Brown, no class member sought to exclude himself from the settlement and all parties and the trial judge signed the consent decree in June, 1975. In September, 1975, three members of the class, Newman, Cutrer, and Neyland, asked the court to order the consent decree inapplicable to them and to allow them to intervene in Brown's individual action. These intervenors argued that this relief was proper because the notice of the consent decree placed in the local papers was misleading in two ways. First, they asserted that the notice implied that all class members would receive back pay, which they did not. Only the named plaintiffs received back pay. Second, the notice failed to inform the class members that in order to be rehired, the consent decree required that they contact the union and achieve one of the seventeen highest scores on a test the union administered to determine union membership. Intervenors allege that had the notices not been so misleading, they would have opted out of the decree and sought back pay as Brown did. Also, although two of the intervenors were already members of the union and could not benefit by taking the test, Neyland was not, and he argued that the misleading decree prevented him from timely contacting the union and taking the qualification test. The district judge granted the motion to intervene, limiting the issues to whether the intervenors were entitled to back pay. The judge also directed that Neyland be "ALLOWED to register as a union member . . . ." Order of June 24, 1976 at 3. On motion of the intervenors, the judge later clarified this order stating: "It was the intent of the Court's minute entry of June 24, 1976, that Jimmy Neyland be allowed to register as a member of the union and to register as a clerk checker with the New Orleans Steamship Association, i. e., to have the same rights he would have if he had received proper notice of the consent decree." Order of July 9, 1976. Pursuant to this clarified order, the union allowed Neyland to take the qualification test. Neyland failed to score among the top seventeen places, however, and therefore no longer seeks to become a union member. Nevertheless, defendants appeal from the district court's orders of June 24 and July 9.
 
 
 3
 As a general rule, only final orders of a district court are appealable to the Courts of Appeals, and unless an order fully disposes of all issues in a case it is not usually considered final. In re 1975-2 Grand Jury Investigation, 566 F.2d 1293, 1296-98 (5 Cir.), Cert. denied, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). Appellants offer several different arguments in support of their contention that this case is properly before us. Many of these theories can be dismissed without lengthy discussion. Thus, it is clear that " '(a)n order allowing intervention is interlocutory and may not be appealed immediately.' " In re 1972-2 Grand Jury Investigation, 566 F.2d 1293, 1301 (5 Cir.), Cert. denied, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). Defendants also argue that the district court's orders granted intervenors back pay claims and ordered a trial on the sole issue of the amount of back pay to award. This is a frivolous argument. The district court's order obviously contemplates that one of the issues at trial will be whether intervenors are entitled to back pay and indicates some ways defendants may prove intervenors are not so entitled. Next, defendants allege that this case is within the "collateral order doctrine" of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and that the district court's order was therefore final for purposes of appeal. This argument is also without merit. This court has repeatedly stated that the Cohen rule applies only when there is "an order, otherwise nonappealable, determining substantial rights of the parties Which will be irreparably lost if review is delayed until final judgment." United States v. Wood, 295 F.2d 772, 778 (5 Cir.), Cert. denied, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1961) (emphasis added); Huckeby v. Frozen Food Exp., 555 F.2d 542, 549 (5 Cir. 1977). In this case, the orders are capable of being reviewed on appeal and defendants have not shown that postponing appellate review will cause them irreparable loss. Therefore, the "collateral order doctrine" is not applicable to this appeal.
 
 
 4
 Defendants' final and most substantial argument in support of appellate jurisdiction is that the district court's order that "Mr. Neyland, be, and hereby is, ALLOWED to register as a union member if he does so within fourteen days," is an injunction that is appealable without regard to finality. 28 U.S.C. § 1292(a)(1). We conclude, however, that this portion of the order cannot provide a basis for appeal because any issues raised by the order are now moot. On its face, the June 24 order appears to require the union to accept Neyland into its membership without condition. The July 9 clarification of that order indicates, however, that the order only required the union to allow Neyland to take its qualification test and to register Neyland as a member if his score was among the seventeen highest, the same rights afforded those who timely responded to the notice of the consent decree. Neyland did not achieve a high score, however, and the district court's order provides him no further relief. This court could fashion no order that would change the relationship of the parties. We cannot order that the union register Neyland, because he failed the test and therefore alleges no right to register. "The controversy between the parties has thus clearly ceased to be 'definite and concrete' and no longer 'touch(es) the legal relations of parties having adverse legal interests.' " DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).
 
 
 5
 Defendants argue that the controversy is not moot, however, because the case presents a question that is "capable of repetition, yet evading review." See generally, Comment, A Search for Principles of Mootness in the Federal Courts, 54 Texas L.Rev. 1289 (1976). We disagree. First, there is no reasonable expectation that Neyland will again request and receive a court order directing the union to administer the test to him. Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Second, assuming that the possibility of future intervenors receiving such relief is sufficient to satisfy the first requirement of the exception, the grant of that relief will not necessarily evade review. Defendants may appeal the order and request that it be stayed pending appeal. Defendants may also allow the future intervenors to take the test. If anyone does achieve a sufficiently high score, the order will compel the union to admit that person. In this situation, there will be a live controversy before the court. DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). We therefore conclude that neither aspect of the repetition/evasion exception to mootness is present in this case.
 
 
 6
 Since the only appealable order in this case is now moot, we refuse to examine the nonappealable order allowing intervention. Many courts have broadly stated: "It is settled that an appellate court that has jurisdiction over an interlocutory order containing injunctive relief may reach and decide other aspects of that order even though the others would not be reviewable independently by interlocutory appeal." Myers v. Gilman Paper Corp., 544 F.2d 837, Modified on rehearing, 556 F.2d 758 (5 Cir. 1977), Cert. dismissed, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1978); 16 C. Wright, et al., Federal Practice & Procedure § 3921 at 21-25 (1977). We find this rule inapplicable to the present case, however, for two reasons. First, the courts stating that rule rarely have considered its applicability when the very basis of the appeal, the injunction, is moot. Once the issue of the propriety of the injunction is moot, the appellate court certainly has less of an interest in deciding the appeal, which at that point concerns only nonappealable orders. The case is nearly identical to one in which there is no appealable order. Thus, the same concerns of judicial economy that justify the prohibition on deciding nonappealable orders, 9 J. Moore, et al., Moore's Federal Practice P 110.07 (2d ed. 1975), are present when the only appealable order becomes moot before the court of appeals considers the case. Second, even in those cases in which the appeal was based on a then moot injunction the district court had already determined that the defendant was liable and had retained jurisdiction of the case only to decide the amount of damages the plaintiff had suffered. E. P. Hinkel & Co. v. Manhattan Co., 165 U.S.App.D.C. 140, 143, 506 F.2d 201, 204 (1974); Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F.2d 924, 933 (8 Cir. 1965).[1] Thus, it was clear that the issues raised by the injunction remained in the case, and inevitably, "the very same issues (will be) brought to us once again after damages have been determined . . . ." Hedberg, 350 F.2d at 933. In this case, however, the district judge has not yet determined whether defendants are liable for back pay. He may decide that they are not so liable. If so, it may be unnecessary for us to decide whether the intervention was proper. There is no reason for us now to anticipate the posture in which this case may return to us, if it does in fact return. Therefore, although this appeal may be within our jurisdiction, we do not believe the interests of judicial economy would be served by an immediate decision on the merits. The appeal is therefore DISMISSED.
 
 
 
 [1]
 Planned Parenthood v. Citizens for Community Action, 558 F.2d 861, 865 (8 Cir. 1977), is not to the contrary. In that case, the trial court's injunction was not moot because defendants had indicated that they would re-enact the legislation the injunction had prohibited